IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Northern Illinois Insurance Agency, Inc. ) | |
| ) | Case No. 13 C 50248 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Leading Insurance Group Insurance ) | |
| Company, Ltd (US), et al. ) | |
| ) | Judge Philip G. Reinhard |
| Defendants. ) | |
| ) | |

**ORDER**

     For the reasons stated below, defendants' motion to dismiss is granted as to Counts IV, IX, and X and denied as to the remainder of the claims. The claims in Counts IV, IX, and X are dismissed without prejudice. Plaintiff, if it wishes to do so, shall file any amended complaint as to these dismissed claims on or before 1/31/2014.

**STATEMENT**

     Plaintiff, Northern Illinois Insurance Agency, Inc., an Illinois corporation with its principal place of business in Illinois, brought this action in state court against defendants Leading Insurance Group Insurance Company, LTD (US) ("LIG"), a corporation organized under the laws of the Republic of Korea with its principal place of business in the Republic of Korea, and Leading Insurance Services, Inc. ("LIS"), a New Jersey corporation with its principal place of business in New Jersey. The complaint is in ten counts. Counts I through VIII are for various contract breaches. Count IX claims a violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (815 ILCS 510/1 et seq.). Count X claims a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (815 ILCS 505/1 et seq.) The amount in controversy exceeds $75,000. Defendants removed to this court based on diversity of citizenship. 28 U.S.C. § 1332(a). Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and pursuant to Fed. R. Civ. P. 8 and 9 for failing to meet the pleading requirements of those rules.

     The facts are taken from plaintiff's complaint. Plaintiff is an independent insurance broker. Plaintiff entered several contracts with defendants. These contracts included a wholesale broker agreement and a retail broker agreement. The contracts authorized plaintiff to bind coverage on behalf of LIG up and until such time as defendants adjusted or revoked that

authority. On February 1, 2013, defendants purported to terminate these agreements with plaintiff. The purported termination did not meet the contractual (which incorporated the state law) or state law notice requirement for termination. Illinois law requires 180 days written notice prior to the effective date of termination.

After the date of purported termination, defendants began issuing cancellation/nonrenewal notices to insureds under policies bound by plaintiff citing as the sole reason for cancellation the purported termination of the broker agreements. Illinois law bars this as a reason for cancellation or nonrenewal of a policy. After plaintiff advised defendants of this law violation, defendants refused to rescind the cancellations. This damaged plaintiff by causing a loss of business, lost profits and loss of reputation.

Pursuant to authority granted it in the broker agreements, plaintiff bound coverage for several insureds. Defendants did not honor these binds of coverage causing plaintiff loss of business, lost profits and loss of reputation.

As to one insured, Roosevelt Mason, defendants failed to honor the bind of coverage and the insured suffered a fire loss. Defendants eventually issued a policy but included an inappropriate endorsement which resulted in denial of the claim for fire loss. This damaged plaintiff in its business and its reputation.

Defendants have denied plaintiff full access to its records and expirations. Defendants computer system did not permit plaintiff to maintain separately a full set of information on quotes and renewals. Plaintiff was required to maintain its records on defendants' computer system. The renewal rights were owned by plaintiff not defendants pursuant to the contracts and Illinois law. Shortly before the purported termination of the broker agreements, and continuing after, defendants refused to allow plaintiff access to the computer system to access necessary information to service plaintiff's accounts. Defendants have failed to respond to plaintiff's inquiries concerning its existing accounts, failed to respond to claims of insureds, and made false statements about plaintiff to plaintiff's existing and potential insureds and to brokers and others in the industry.

Under the wholesale broker agreement, defendant LIG was to pay plaintiff a commission of 17%. This rate was negotiated between plaintiff's president and LIG's president on or about Juy 17, 2012. Instead, defendant LIG allowed only a 15% commission on "Broker Billing" accounts. As an alternative to "Broker Billing" on some accounts under both the wholesale and retail agreements, defendant LIG directly billed ("Customer Billing") customers and collected the premiums and was to pay plaintiff commissions out of these amounts collected. Defendant LIG has failed to pay or account for all of the commissions due plaintiff on these direct billed accounts.

In addition to the two broker agreements, plaintiff and defendant LIG entered a profit sharing agreement for 2012. Under the terms of the profit sharing agreement, plaintiff was

entitled to a monetary reward if it met certain targets. Plaintiff met these targets and requested its reward on January 28, 2013. Defendant LIG responded that all checks would be issued in late February 2013. Defendant LIG has refused to pay any reward to plaintiff.

On February 14, 2013, defendant LIG's counsel advised plaintiff it would not unreasonably withhold approval of binds made by plaintiff. Plaintiff relied on these representations in advising its clients. Despite these representations defendant LIG unreasonably withheld approval of all of the outstanding binds quoted prior to the purported contract terminations. Defendant LIG has made false, misleading and disparaging statements concerning its dealings with plaintiff, including misrepresentations as to whether plaintiff had submitted a notice of loss for a client on a fire loss claim and falsely claiming nonpayment of premiums as a basis for cancelling policies when timely payment had in fact been sent.

Defendants move to dismiss all of plaintiff's claims asserting none of the facts recited above state any actionable claim. To survive a motion to dismiss for failure to state a claim, the complaint must contain allegations that state a claim to relief that is plausible on its face." Lavalais v. Village of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013) (internal quotation marks and citation omitted). "A plaintiff must plead some facts that suggest a right to relief that is beyond the speculative level. This means that the complaint must contain allegations suggesting (not merely consistent with) an entitlement to relief." Id. (Internal quotation marks and citations omitted).

Count I for wrongful termination of the contracts, Count VII for failure to pay commissions, and Count VIII for failure to pay a reward under the profit sharing agreement all clearly state actionable claims. Defendants seem to acknowledge this in their brief ("this is a straightforward dispute about whether Plaintiff was properly terminated and whether Plaintiff is entitled to further commissions") but go on to claim these counts should be dismissed anyway. Defendants cite a summary judgment case, Manuel Int'l v. M.R. Berlin, Inc., 525 F. Supp. 90 (N.D. Ill. 1981) (Shadur, J.), contending it somehow requires the complaint to identify customers who were lost as a result of the alleged breach of contract in order to adequately plead damages. But, this is unnecessary to withstand a motion to dismiss. Plaintiff alleges it was wrongfully terminated and that it lost profits as a result. These allegations certainly suggest an entitlement to relief. Lavalais, 734 F.3d at 632.

Defendants also contend the complaints allegation that the "purported termination did not comply with the contracts' notice provisions" does not give defendants notice of the claims against them because it "fails to allege with which notice provision Defendants allegedly failed to comply– there are four provisions governing termination of the contract." Defendants go on to state "[i]n fact, three of the provisions do not even require notice of termination." However, it seems fairly clear that an allegation that a notice provision required for termination was not complied with, when there is, in fact, only one such notice provision in each contract, means it is that notice provision (i.e. the only notice provision) that plaintiff is alleging was not complied with. Additionally, plaintiff pleads defendants did not give it required statutory notice and

3

specifically pleads the allegedly violated statute. Defendants' argument that a reasonable inference cannot be drawn as to which notice provisions plaintiff claims were violated is completely baseless.

Defendants argue plaintiff failed to allege that plaintiff performed its obligations under the contracts and that such an allegation is necessary to plead a claim for breach of contract. Federal pleading is notice pleading requiring only that the complaint contain allegations suggesting an entitlement to relief. No purpose would be served here by requiring plaintiff to re-plead to insert a specific allegation that it performed its obligations under the contract. Plaintiff alleges wrongful termination under contract and state law, a failure to account for and pay earned commissions, and a failure to pay an earned reward under the profit sharing agreement. Performance by plaintiff is implicit in these allegations. Defendants will have the opportunity to refute plaintiff's claims at a later point in this litigation. Defendants' motion to dismiss is denied as to Counts I, VII, and VIII. Additionally, "the failure to plead performance" argument, which is also raised by defendants as to Counts II, III, IV, V, and VI, fails as a basis for dismissal of those counts as well.

Count V alleges defendants denied plaintiff access to records and expirations owned by plaintiff. The contract provided plaintiff's records and expirations were plaintiff's property. Plaintiff alleges defendants computer system did not permit plaintiff to maintain separately a full set of information on quotes, renewals, etc. Plaintiff was required to maintain its records on defendants' computer system. Shortly before the purported termination of plaintiff, defendant denied plaintiff access to the computer system. They also denied this access after the termination.

Defendants contend Count V does not state a claim for breach of contract because the contracts called for plaintiff to maintain its own records. However, plaintiff alleges the course of conduct of the parties was otherwise such that the records were only kept, and that it was only possible for them to be kept, on defendants' computer system. Under Illinois law, written contracts can be modified by course of conduct. Coventry Health Care Workers Compensation, Inc. v. Medicor Managed Care, LLC, No. 10 C 7814, 2012 WL 787058, * 2 (N.D. Ill. Mar. 9, 2012) (Kendall, J.). A determination of whether such a modification occurred requires evidence which must be produced at a later stage in the proceedings. Plaintiff's allegations are adequate to survive a motion to dismiss. Count V will not be dismissed.

Defendants argue Counts II, III, IV, and VI must be dismissed because they attempt to state a claim for injuries to third parties and plaintiff lacks standing to advance such claims. They also contend plaintiff has not alleged it suffered any actual damages under Counts II, III, and IV and that this failure requires dismissal.

Plaintiff alleges, in Count II, that defendants issued cancellation and nonrenewal notices to insureds based solely on the purported termination of plaintiff. This is a violation of Illinois law. Plaintiff advised defendants of the violation but defendants refused to rescind the notices

they had sent to insureds.  Count III lists certain insureds plaintiff bound coverage for prior to defendants purported termination of plaintiff.  Defendants failed to issue policies for these insureds.  Some of them abandoned plaintiff as their broker, some plaintiff placed with other carriers, and some plaintiff continued to ask defendants to issue policies for.

Defendant asserts these counts seek to advance claims for third parties but the allegations clearly go to losses suffered by plaintiff.  Plaintiff alleges lost profits.  The loss of profits by plaintiff is a logical inference to draw from cancelling policies on which plaintiff was entitled to a commission and failing to issue policies bound by plaintiff on which it also would have earned a commission.  While plaintiff certainly emphasizes the harm it perceives occurring to the insureds involved, the claims go to injuries to plaintiff not to the insureds.  Plaintiff has standing to advance these claims, because they assert injury to plaintiff, and has adequately alleged damages. (See discussion above.)

Count IV involves the nonpayment of a specific fire loss claim of an insured under a policy bound by plaintiff.  Defendants argue plaintiff is trying to make a claim on behalf of its customer and that plaintiff has not pled that it suffered any recoverable damages from this nonpayment of the claim.  It is true plaintiff does not plead a plausible basis for a claim.  Did plaintiff never get paid a commission on this policy?  Is the customer claiming plaintiff misrepresented the terms of the policy and is making a claim against plaintiff for that?  Plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level." Lavalais, 734 F.3d at 632.  Count IV fails to state a claim.

Count VI claims breach of contract by "a wide variety of more subtle misconduct."  Defendants argue this count seeks to advance a claim only on behalf of third parties but the allegations assert losses suffered by plaintiff as well.  While the allegations appear to duplicate claims made in other counts, there would be no purpose served in dismissing this count.  Whether plaintiff has suffered any provable loss as the result of a breach by defendants must be determined at a later stage of this litigation.

Count IX is a claim under the UDTPA.  The UDTPA codified the common law tort of commercial disparagement. See Conditioned Ocular Enhancement, Inc. v. Bonaventura, 458 F. Supp.2d 704, 710 (N.D. Ill. 2006) (Zagel, J.)  To state a claim for commercial disparagement under the UDTPA, plaintiff must allege defendants disparaged the quality of plaintiff's goods or services. Id.  The statements must "specifically disparage a product or service and not just attack the reputation of the business." Organ Recovery Systems, Inc. v. Preservation Solutions, Inc., No. 11 C 4041, 2012 WL 116041, *6 (N.D. Ill. Jan. 16, 2012) (Kennelly, J.)  The complaint does not allege any such specific disparagement.  It alleges defendants gave false information to certain insureds about payments received, nonrenewal notices, and the receipt of a notice of property loss and that this "disparaged the reputation" of plaintiff.  These statements do not go to a specific product or service of the plaintiff.  Attacks on reputation are not enough. Id.

Count X is a claim under the ICFA. The elements of an ICFA claim are "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." Cohen v. American Security Ins. Co., 735 F.3d 601, 608 (7th Cir. 2013) (internal quotation marks and citation omitted.) Claims for violation of ICFA as to fraud and deception, "are subject to the same heightened pleading standards as other fraud claims; as such they must satisfy the particularity requirement of Rule 9(b)." Greenberger v. GEICO General Ins. Co., 631 F.3d 392, 399 (7th Cir. 2011). "Under Federal Rule of Civil Procedure 9(b), the [plaintiff has] to state with particularity the circumstances constituting fraud. This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." AnchorBank, FSB v. Hofer, 649 F.3d 610, 615 (7th Cir. 2011). The complaint must paint "a sufficiently detailed picture of the alleged scheme." Id. A claimed deceptive act or practice "involves more that the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract. Greenberger, 631 F.3d at 399 (internal quotation marks and citations omitted).

The acts alleged by plaintiff do not state a claim under ICFA. Plaintiff alleges defendants' counsel communicated that defendants would not unreasonably withhold approval of policy binds but that defendants did afterward unreasonably do so. This is simply alleging defendants promising something and failing to do it. The other allegations (that defendants gave false information to certain insureds about payments received, nonrenewal notices, and the receipt of a notice of property loss) are all statements made to someone other than plaintiff. Plaintiff does not plausibly allege how defendants could have intended that plaintiff rely on these representations to third parties. Defendants' intent that plaintiff rely the representations is an element necessary to state a claim for deception under ICFA. Cohen, 735 F.3d at 608.

For the foregoing reasons, defendants' motion to dismiss is granted as to Counts IV, IX, and X and denied as to the remainder of the claims. The claims in Counts IV, IX, and X are dismissed without prejudice. Plaintiff, if it wishes to do so, shall file any amended complaint as to these dismissed claims on or before 1/31/2014.

Date:12/09/2013                    ENTER:

*Philip G. Reinhard*
_____
United States District Court Judge

Electronic Notices. (LC)